**In re the Grand Jury Proceedings of Phillip Randy CASTIGLIONE.**

**Grand Jury No. 0886.**

United States District Court, E.D. California.

April 30, 1984.

Timothy V. Magill, Nuttall, Berman & Magill, Fresno, Cal., for petitioner Castiglione.

Donald B. Ayer, U.S. Atty., Edward P. Moffat, Asst. U.S. Atty., Fresno, Cal., for the U.S.

## ORDER RE MOTION TO QUASH GRAND JURY SUBPOENA DUCES TECUM.

PRICE, District Judge.

Phillip Randy Castiglione (hereinafter Castiglione) moves the Court to quash certain subpoenas which have been issued on behalf of a Federal Grand Jury sitting in Fresno, California. The subpoenas fall into two categories: (a) Subpoenas addressed to financial institutions, and (b) subpoenas which were issued to non-financial institutions. The Court will consider each category separately.

### FACTUAL BACKGROUND

Castiglione's moving papers indicate that he has filed a claim with the Department of Agriculture for crop losses resulting from adverse weather conditions in 1983. These claims were based upon his coverage under the Federal Crop Insurance program, and have been contested. The Department of Agriculture is currently investigating these claims administratively.

From the documents submitted to the Court, it would appear that special investigators for the Department of Agriculture served the subpoenas. In letters of instructions served with the Grand Jury subpoenas, the recipients of the subpoenas were instructed that, "The Grand Jury *considers your release* of those records referred to in the subpoena to the agent or officer serving the same is full compliance of the subpoena." Based on the copies of documents submitted to the Court, it would appear that the parties receiving the subpoenas, in effect, are being instructed to turn the records over to the same agency investigating Castiglione administratively.

This is the principal thrust of Castiglione's complaint.

In addition, the United States Attorney's letter of instruction, in several instances, advised the recipient of the subpoena that: "You are not to disclose the existence of this request for a period of at least 90 days from the date of this request. Any such disclosure could impede the investigation being conducted, and thereby interfere with the enforcement of the law. Please refer to Title 12, United States Code, §§ 3413(i), 3415 and 3420." [1] In some instances, the recipient of the subpoena was merely admonished that, "This request and the information and the records provided hereunder must be kept confidential."

### Subpoenas Served on Financial Institutions

In 1978 Congress passed a comprehensive Financial Records Privacy Act. *See* 12 U.S.C. §§ 3401–3422.[2] In enacting this legislation, the legislative history contains the following single reference to Grand Jury subpoenas:

The committee did adopt an amendment which requires that use of financial records obtained pursuant to a grand jury subpoena be more strictly limited. The amendment requires that the records be actually presented to the grand jury and used only for the purposes of the grand jury investigation, *i.e.*, indictment and prosecution.

1978 *U.S. Code Congressional and Administrative News* 9307.

That amendment is embodied in 12 U.S.C. § 3420, which provides as follows:

Financial records about a customer obtained from a financial institution pursuant to a subpena issued under the authority of a Federal grand jury—

(1) shall be returned and actually presented to the grand jury;

---

1. None of these sections authorize such an instruction.

2. All statutory references hereafter are to 12 U.S.C. unless otherwise indicated.

(2) shall be used only for the purpose of considering whether to issue an indictment or presentment by that grand jury, or of prosecuting a crime for which that indictment or presentment is issued, or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure [USCS Rules of Criminal Procedure, Rule 6(e) ];

(3) shall be destroyed or returned to the financial institution if not used for one of the purposes specified in paragraph (2); and

(4) Shall not be maintained, or a description of the contents of such records shall not be maintained by any Government authority other than in the sealed records of the grand jury, unless such record has been used in the prosecution of a crime for which the grand jury issued an indictment or presentment or for a purpose authorized by rule 6(e) of the Federal Rules of Criminal Procedure [USCS Rules of Criminal Procedure, Rule 6(e) ].

█ There has been very little judicial review of the section in question. However, it is apparent from the plain reading of the statute that Federal Grand Juries are entitled to receive financial records upon service of a Grand Jury subpoena. It is equally obvious that some of the procedures employed by the U.S. Attorney's Office in the instant case, however, are directly prohibited by the Act in question.

First, it is clear that the designated representative of the financial institution who has received a Grand Jury subpoena must *personally appear* and *deliver the records*

to the *Grand Jury. See* § 3420(1). Once the records are delivered to the Grand Jury, their use is strictly limited by § 3420(2), *i.e.*, records may only be used by the Grand Jury in considering whether to issue an indictment or presentment; by the U.S. Attorney in prosecuting a crime charged in such indictment or presentment; or finally, for the purposes authorized by Rule 6(e) of the Federal Rules of Criminal Procedure.[3]

█ Based on the foregoing, it is clear that the directions which accompanied the Grand Jury subpoenas to the financial institutions were improper in that they suggested that the financial institutions might comply with the subpoenas by simply delivering the subpoenaed records to the agent serving the process. Such a practice, of course, is clearly prohibited by the statute, and can no longer be employed by the Grand Jury when financial records from financial institutions are being sought.

The Court also notes that the instruction to the recipient that they were not to notify anyone about the receipt of the subpoena, or the request for records contained therein, is likewise not authorized by law. A similar admonition was before the Court in *In re Vescovo Special Grand Jury,* 473 F.Supp. 1335. As Judge Byrne pointed out in that case, the secrecy provisions contained in Rule 6(e) of the Federal Rules of Criminal Procedure do not impose any obligation of secrecy on witnesses prior to testifying, and he concluded that the United States Attorney's attempt to do so could not be done legally.[4]

> The government's letter requesting that the subpoena not be disclosed to the depositor may, however, be interpreted as an informal request that the bank exercise any discretion it may have not to disclose the subpoena. As such, the letter does not require the bank to do or not to do anything. It merely informs the bank that the government believes its investigation would be hindered by disclosure of the subpoena.

It should be noted that *Vescovo, supra,* concerned a possible conflict between State and Federal law in this area. This area of potential conflict may arise frequently. *See In Re East*

---

**3.** Rule 6(e) dictates the method by which Grand Jury proceedings are recorded, and enunciates the general rule of secrecy which shrouds all Federal Grand Jury proceedings, and the exceptions thereto. Apparently, it was the intent of Congress, by reference to Rule 6(e) generally, to allow limited disclosure of the contents of the financial records as is provided in Fed.R. Crim.P. 6(e)(3).

**4.** There appears to be no legal prohibition against the U.S. Attorney's request that the service of the subpoena or the investigation remain confidential. *In re Vescovo, supra,* at 1335–6, states:

To the same effect, see *In re Investigation Before April 1975 Grand Jury*, 531 F.2d 600, 606–607, n. 11 (D.C.Cir.1976).

The Right to Financial Privacy Act has comprehensive provisions concerning the customer's right to know of government attempts to procure his/her/its financial records.

§ 3404(c) gives the customer the general right "to obtain a copy of the record which the financial record shall keep of all instances in which the customer's record is disclosed to a government authority pursuant to this section, including the identity of the government authority to which such disclosure is made."

§ 3405(2) requires the customer to be served with a copy of any administrative subpoena or summons utilized to obtain financial records.

§ 3406(b) requires the customer to be mailed a copy of a search warrant used to obtain financial records within 90 days of the date of the service of such search warrant.

§ 3407(2) requires a copy of any judicial subpoena to be served upon the customer or mailed to his last known address on or before the date on which the subpoena was served on the financial institution.

§ 3408(4) requires a copy of a formal written request by any governmental authority requesting financial records to be served upon the customer or mailed to his last known address on or before the date on which the request is made to the financial institution.

§ 3412(b) requires notice to the customer that the agency that originally procured the records is transferring the records to another governmental agency or department, a practice which is generally prohibited by the Act "unless the transferring agency or department certifies in writing that there is notice to believe that the records are relevant to a legitimate law

enforcement inquiry within the jurisdiction of the receiving agency or department." [5]

Congress did not leave the government powerless in this area of required notice to the customer, however. 12 U.S.C. § 3409 provides:

(a) upon application of the Government authority, the customer notice required under section 1104(c), 1105(2), 1106(c), 1107(2), 1108(4), or 1112(b) [12 U.S.C. §§ 3404(c), 3405(2), 3406(c), 3407(2), 3408(4), 3412(b) ] may be delayed by order of an appropriate court if the presiding judge or magistrate finds that—

(1) the investigation being conducted is within the lawful jurisdiction of the Government authority seeking the financial records;

(2) there is reason to believe that the records being sought are relevant to a legitimate law enforcement inquiry; and

(3) there is reason to believe that such notice will result in—

(A) endangering life or physical safety of any person;

(B) flight from prosecution;

(C) destruction of or tampering with evidence;

(D) intimidation of potential witnesses; or

(E) otherwise seriously jeopardizing an investigation or official proceeding or unduly delaying a trial or ongoing official proceeding to the same extent as the circumstances in the proceeding [preceding] subparagraphs.

An application for delay must be made with reasonable specificity.

(b)(1) If the court makes the findings required in paragraphs (1), (2), and (3) of subsection (a), it shall enter an ex parte order granting the requested delay for a period not to exceed ninety days and an order prohibiting the financial institution from disclosing that records have been obtained or that a request for records has been made, except that, if the

---

*National Bank of Denver,* 517 F.Supp. 1061 (D.C. Colo.1981).

**5.** Many of these sections contain explicit details of the contents of the notice that the customer must receive.

records have been sought by a Government authority exercising financial controls over foreign accounts in the United States under section 5(b) of the Trading with the Enemy Act (50 U.S.C.App. 5(b)), the International Emergency Economic Powers Act (title II, Public Law 95–223) [50 USCS §§ 1701 et seq.], or section 5 of the United Nations Participation Act (22 U.S.C. 287c) § 22 USCS § 287c, and the court finds that there is reason to believe that such notice may endanger the lives or physical safety of a customer or group of customers, or any person or group of persons associated with a customer, the court may specify that the delay be indefinite.

(2) Extensions of the delay of notice provided in paragraph (1) of up to ninety days each may be granted by the court upon application, but only in accordance with this subsection.

(3) Upon expiration of the period of delay of notification under paragraph (1) or (2), the customer shall be served with or mailed a copy of the process or request together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:

"Records or information concerning your transactions which are held by the financial institution named in the attached process or request were supplied to or requested by the Government authority named in the process or request on (date). Notification was withheld pursuant to a determination by the (title of court so ordering) under the Right to Financial Privacy Act of 1978 that such notice might (state reason). The purpose of the investigation or official proceeding was _____.".

(c) When access to financial records is obtained pursuant to section 1114(b) [12 USCS § 3414(b) ] (emergency access), the Government authority shall, unless a court has authorized delay of notice pursuant to subsections (a) and (b), as soon as practicable after such records are obtained serve upon the customer, or mail by registered or certified mail to his last known address, a copy of the request to the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry:

"Records concerning your transactions held by the financial institution named in the attached request were obtained by (agency or department) under the Right to Financial Privacy Act of 1978 on (date) for the following purpose: _____. Emergency access to such records was obtained on the grounds that (state grounds).".

(d) Any memorandum, affidavit, or other paper filed in connection with a request for delay in notification shall be preserved by the court. Upon petition by the customer to whom such records pertain, the court may order disclosure of such papers to the petitioner unless the court makes the findings required in subsection (a).

■■■ The purpose of Congress clearly emerges. First, it should be noted that unlike the other instances where financial records are being sought by a governmental agency, the notice to the customer of the service of a Grand Jury subpoena is *not required*. By the same token, disclosure by the financial institution to the customer that the subpoena has been received is not prohibited. Finally, it should be noted that § 3409, which prescribes the procedure by which the government may obtain a court order to delay the required notice to the customer does not contain any reference to the section which authorizes the issuance and use of Grand Jury subpoenas. It is the Court's conclusion that the intent of Congress to allow the financial institution complete discretion in its dealing with the customer relative to the existence of a grand jury investigation.

### The Non-Financial Subpoenas

■ In addition to the financial institutions, several other business entities received subpoenas from the Grand Jury investigating the activities of Castiglione.

Clearly, they are not subject to the provisions of the Right to Financial Privacy Act which the Court has just discussed, and they satisfied the requirements of the subpoena by delivering the requested records to the agent delivering the subpoena. However, it should be noted that material furnished pursuant to those subpoenas is still subject to the secrecy requirements of Fed.R.Crim.P. 6(e)(2) and (3). Since violation of that rule can result in a finding that the violator is in contempt of court, it is incumbent upon the U.S. Attorney's Office that some overzealous administrative investigator does not become the victim of his own ambition.

Finally, Mr. Castiglione's counsel argues that the existence of the administrative investigation of Castiglione's crop insurance claim makes it obvious and apparent that the Grand Jury is merely being used as a means to further the administrative investigation and urges the Court to quash these subpoenas on this general ground. The existence of an administrative inquiry is not grounds for impeding the Grand Jury investigation. Rather, if Grand Jury is improperly utilized by the administrative agency in its determination, Castiglione's rights lie in other directions, and possibly in another forum.

■ The government's general assertion that Castiglione has no standing to bring this motion is clearly erroneous. First of all, the cases cited by the government are all cases which precede the passage of the Right to Financial Privacy Act.

Secondly, sections 3416, 3417 and 3418 of Title 12 specifically place jurisdiction in district courts generally, and prescribe the judicial remedies that are available to the person affected, including injunctive relief. As was pointed out in another context in *Jerry T. O'Brien, Inc. v. S.E.C.*, 704 F.2d 1065, 1069 (9th Cir.1983):

Third-party recipients of agency process appear to lack standing to require an agency to conduct its investigation of a target consistently with *Powell*. *See Sierra Club v. Morton*, 405 U.S. 727, 733, 734–45, 92 S.Ct. 1361, 1365, 1365–66,

31 L.Ed.2d 636 (1972). Thus, denying the target notice of agency process issued to third parties necessarily denies the target the ability to assert its right to be investigated consistently with *Powell*. The target's right could be asserted by seeking permissive intervention in enforcement proceedings brought by the agency against the third party or by other appropriate district court proceedings.

As a practical procedural matter, the Court did quash all existing subpoenas so that the matter might be studied by the Court and a more appropriate order issued so that the matter could proceed in an orderly fashion. Based on the foregoing,

IT IS THE ORDER OF THE COURT THAT:

New subpoenas may be issued by the Grand Jury to such financial institutions as are necessary to carry on the investigation of Phillip Randy Castiglione, directing the custodian of records of such institutions to personally appear and deliver such records into the Grand Jury's custody.

The subpoenas may contain an appropriately worded request for the information to remain confidential, but must also inform the financial institution that it may, if their discretion so dictates, notify the customer that their records are being so subpoenaed.

Once received, such records will remain in the sole and exclusive custody of the Grand Jury and will be used by them and the U.S. Attorney only for the purposes prescribed in 12 U.S.C. § 3420, and may be disclosed only to those authorized to receive disclosure under Rule 6(e)(3), Fed.R. Crim.P.

Finally, when their usefulness is concluded, the records will either be returned to the financial institution or destroyed as provided in 12 U.S.C. § 3420.